IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVE NYAMIRA, et al.                :
                                     :
      v.                             :   Civil Action No. DKC 17-3379
                                     :
LITTLE KAMPALA SERVICES, LLC,        :
et al.                               :

**MEMORANDUM OPINION**

Steve Nyamira and Douglas Ominde filed this complaint pursuant to the Fair Labor Standards Act (FLSA) seeking wages arising from their employment at Little Kampala Bar & Grill. Plaintiff Ominde worked for Defendants Little Kampala Services, LLC, Trudy Kaliisa-Ofwono and Paul Ofwono (collectively, "the Defendants") at Little Kampala Bar & Grill ("the restaurant") as a line cook and bartender from June, 2016 through August, 2016. (ECF No. 1, at 3-5). Mr. Ominde alleged in the complaint that he "regularly worked approximately 80 hours per week" throughout the course of his employment, he was hired at an hourly rate of $12 per hour, and the Defendants paid him the required minimum wage for only one bi-weekly period during the course of his employment. (*Id.*, at 10). Plaintiff Nyamira worked at the restaurant as a manager (ECF No. 1, at 6) from June, 2016 through January, 2017 (*Id.*, at 5), alleges that Defendants denied him wages (*Id.*, at 7), and seeks the same relief as

Douglas Ominde (*Id.* at 12-15). However, Plaintiff Ominde independently reached a settlement with Defendants and Plaintiff Nyamira's claims remain outstanding at this time. (ECF No. 44).

Mr. Ominde and Defendants filed a joint motion for approval of settlement agreement in this Fair Labor Standards Act ("FLSA") case on October 2, 2018. (ECF No. 44). The Agreement provides that, upon court approval, Defendants will pay Plaintiff Ominde $750.00 in unpaid wages and $750.00 in liquidated damages. (ECF No. 44-1, at 2). Defendants will also pay $1,500.00 for attorneys' fees and costs. (*Id.*). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because the proposed settlement agreement represents a fair and reasonable resolution of a *bona fide* FLSA dispute, the settlement will be approved.

**I. Background**

Plaintiff Ominde contended in his complaint that he is owed wages, liquidated damages, pre- and post-judgment interest, and attorney's fees and costs. (*Id.*, at 12-15). Based on these allegations, Plaintiff filed a complaint asserting violations of the Maryland Wage and Hour Law (the "MWHL"), Md.Code Ann., Lab. & Empl. § 3-401, *et seq.* (Count I); the Maryland Wage Payment and Collection Law (the "MWPCL"), Md.Code Ann., Lab. & Empl. §

3-501, *et seq.* (Count II); and the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.* (Counts III-V). Plaintiff filed an amended complaint on May 15, 2018. (ECF No. 19). The amended complaint asserted an additional breach of contract allegation, stating that defendants materially breached their oral contract with Plaintiff Ominde "by not paying Plaintiff [Ominde] the agreed-to mutually accepted wage rate for work Plaintiff [Ominde] performed for Defendants at Little Kampala." (ECF No. 19, at 11).

## II. Analysis

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights to seek liquidated damages upon accepting the full amount of the wages owed. *See* 29 U.S.C. § 216(c). Under the second exception, a district court can approve a settlement between an

employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching."  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also* Duprey v. Scotts Co., 30 F.Supp.3d 404, 407 (D.Md. 2014).

Although the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered in deciding whether to approve such settlements, district courts in this circuit typically employ the considerations set forth by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores*.  *See, e.g.*, *Duprey*, 30 F.Supp.3d at 407-08; Lopez v. NTI, LLC, 748 F.Supp.2d 471, 478 (D.Md. 2010).  An FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions."  *Lynn's Food Stores*, 679 F.2d at 1355.  Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute."  *Id.* at 1354*.*  Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a

number of factors, including: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . .; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sept. 28, 2009); *see also Duprey*, 30 F.Supp.3d at 408, 409. Finally, where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a 'conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Lane v.* Ko-Me, LLC, No. DKC-10-2261, 2011 WL 3880427, at *3 (Aug. 31, 2011) (citation omitted).

### A. *Bona Fide* Dispute

"In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and

5

recitals in the proposed settlement agreement." *Duprey*, 30 F.Supp.3d at 408. Here, there is a *bonda fide* dispute. In the complaint, Plaintiff Ominde alleged that Defendants "never paid [Plaintiff Ominde] the required minimum wage for all hours worked while he was employed by Defedants." (ECF No. 1, at 10). He further asserted that Defendants failed to pay him overtime wages, retained credit card tips owed to Plaintiff Ominde, and failed to reimburse Plaintiff Ominde for work-related purchases. (*Id.*). While Defendants admitted that they wrongfully kept Plaintiff Ominde's credit card tips, Defendants denied all of Plaintiff Ominde's remaining allegations. (ECF No. 10, at 6). It now appears as well that the parties differ in their view as to the actual hours worked and the amounts paid.

### B. Fairness & Reasonableness

Upon review of the parties' submissions and after considering the relevant factors, *see Duprey*, 30 F.Supp.3d at 409, the Agreement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute. The parties agreed to settle after conducting written and documentary discovery. (ECF No. 44 ¶ 7). Before entering the Agreement, "Plaintiff [Ominde] and his counsel discussed the Plaintiff's unpaid wages" and "Plaintiff calculated that he was owed

$2,971.52 in unpaid wages." (*Id.*). The parties also assert that they had "extensive discussions" wherein the parties were "counseled and represented by their respective attorneys" before reaching a settlement agreement. Thus, the parties have had sufficient opportunity to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11. Moreover, there is no evidence that the Agreement is the product of fraud or collusion.

The settlement amount, in light of Plaintiff Ominde's now stated potential recovery, also appears to be fair and reasonable. In his complaint, Plaintiff Ominde alleged that Defendants never paid him "the required minimum wage for all hours worked while he was employed by Defendants" or "overtime wages at a rate of one and one-half times his regular rate of pay for all overtime hours worked in excess of 40 hours per week as required by FLSA, 29 U.S.C. § 207." (ECF No. 1, at 10). Plaintiff Ominde further asserted that Defendants withheld his credit card tips and failed to reimburse him for work-related purchases. (*Id.*). Plaintiff Ominde used the discovery process
7

and discussions with counsel more specifically to calculate the damages sought, resulting in Plaintiff Ominde's calculation that "he was owed $2,971.52 in unpaid wages." (ECF No. 44 ¶ 7). Although the settlement amount of $750 in unpaid wages and $750 in liquidated damages is a substantial departure from the amount Plaintiff Ominde originally requested via the information he provided in his complaint, the amount appears to be a fair and reasonable resolution of Plaintiff Ominde's disputed claims because the parties "engaged in private settlement discussions based on their independent calculations" and "attest to the fairness and reasonableness of their amicable settlement." (*Id.*).

The Agreement also contains a general release of claims beyond those specified in the amended complaint. The Agreement states, in relevant part:

> The Plaintiff for himself, his heirs, and personal representatives hereby releases and forever discharges the Defendants, the Defendants' directors, officers, employees, agents, principals, attorneys, predecessors, and successors from any and all claims, obligations, debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, and damages whatsoever of every name and nature, both in law and equity, which Plaintiff now has or in the future may have arising out of his employment with Defendants or the

8

> termination of his employment . . . from the
> date of this Agreement back to the beginning
> of time.

(ECF No. 44-1, at 3-4). The release also prohibits Plaintiff Ominde from "assist[ing] in the prosecution of any claim (if not otherwise compelled to do so by legal process) or [] recover[ing] any money as a result of any claim pursued by the U.S. Department of Labor." (*Id.*, at 4-5). Finally, the Agreement includes "covenant not to sue" and "non-disparagement" clauses that preclude Plaintiff Ominde from filing suit against or publicly criticizing Defendants in the future. (*Id.*, at 5-6).

Some courts have held that overly broad release provisions can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint. *See, e.g., Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1352, (M.D.Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that fails "judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10–5243 SBA, 2012 WL 6629608, at *3 (N.D.Cal. Dec. 19, 2012) (rejecting FLSA settlement agreement where the release "provision does not track the breadth of the allegations in this action and releases

unrelated claims"). Although a general release can render an FLSA settlement agreement unreasonable, the court "is not required to evaluate the reasonableness of the settlement as it relates to non-wage-dispute claims if the employee is compensated reasonably for the release executed." *Villarroel v. Sri Siva Vishnu Temple*, No. GJH-I-T-02617, 2014 WL 7460967, at *3 (D.Md. Dec.31, 2014); *see also Duprey*, 30 F.Supp.3d at 410 (wherein the court approved a settlement agreement that included a general release of claims on the basis that the employee was reasonably compensated for the release). Because the $1,500 provided to Plaintiff Ominde in the Agreement appears to be a fair and reasonable resolution of Plaintiff Ominde's claims, the amount also reflects fair compensation for the release and non-disparagement provisions executed.

**C.   Attorneys' Fees and Costs**

Finally, the provisions regarding attorneys' fees and costs must also be assessed for reasonableness.

> In assessing the reasonableness of the fee, courts typically refer to the principles of the traditional lodestar method as a guide, even when the attorneys fees are based on a contingency fee. An attorneys fee award negotiated pursuant to a contingent-fee arrangement can be approved if a court finds that (1) the fees were negotiated separately from the damages, so that they do not

> infringe on the employee's statutory award, and (2) they are reasonable under the lodestar approach.

*Hackett v. ADF Restaurant Invs.*, 259 F.Supp.3d 360, 367 (D.Md. 2016) (internal citations omitted). The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). "An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). This court has established presumptively reasonable rates in Appendix B to its Local Rules.

Plaintiff Ominde's counsel state in the joint motion that "[t]he total of Plaintiff's attorneys' fees in this matter are now over $11,000." (ECF No. 44 ¶ 9). However, the Agreement also states that "in order to resolve this litigation, Plaintiff's counsel has agreed to the attorney fee payment set forth in the Settlement Agreement and the Parties agree this is a fair amount given the actual amount of fees and costs reasonably incurred in this matter by Plaintiff's counsel." (*Id.*, at 4). In the agreement, Plaintiff Ominde's counsel agree

to collect $1,500 in attorneys' fees and costs. The attorneys' fees appear to be reasonable. Plaintiff Ominde's counsel do not indicate the years of experience they possess[1] or the number of hours they spent working on his case. However, even at the minimum compensation rate of $150 set forth in Appendix B, the settlement amount provides counsel with compensation for only ten hours of work on Plaintiff Ominde's case. Given the extensive docket, it is likely that Plaintiff Ominde's counsel dedicated more than ten hours of their time to this case. Thus, even without assessing counsels' years of experience and the exact amount of time they spent working on the case, it is clear that the total attorneys' fees in the amount of $1,500 are reasonable and below the customary fee in Maryland for the legal work involved.

---

[1] From other cases in this court, the court can discern that Mr. Lebau has practiced for over twenty-five years and billed in 2017 at the rate of $475 per hour. *See Walters v. Tievy Elec. Co.*, No. PX 16-3916, 2017 WL 818716, at *3 (D.Md. Mar. 2, 2017). Mr. Wang was admitted to practice in 2012, and his rate is $300 per hour. *See* Plaintiffs' Motion for Attorneys' Fees, *Membreno v. Kargmans, Inc.*, No. 18-0332 (D.Md. July 3, 2018), ECF No. 21-3.

**Conclusion**

For the foregoing reasons, the joint motion for approval of settlement agreement will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
